U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

MAR 0 4 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

Cal Dive International Inc.                                Civil Action No. 14-03033

versus                                                           Judge Richard T. Haik, Sr.

Schmidt, et al                                    Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion To Dismiss under Federal Rule of Civil Procedure 12(b) filed by Defendants, Thomas R. Edwards and Thomas R. Edwards, Inc. APLC (collectively referred to as "Edwards") [Rec. Doc. 25],  Andrew Schmidt [Rec. Doc. 28] and Joseph Walker [Rec. Doc. 37],[1] an Opposition filed by Plaintiffs, Cal Dive International, Inc. ("Cal Dive") and Underwriters Severally Subscribing to Lloyd's Policy PE0903008 (collectively "Plaintiffs"), [Rec. Doc. 43], Defendants' Reply thereto [Rec. Doc. 52] and Plaintiffs' Sur-Reply [Rec. Doc. 61].  For the reasons that follow, Defendants' Motions To Dismiss will be granted.

### II. Background

Defendants Edwards and Walker, were counsel of record for Defendant Schmidt (sometimes referred to "Schmidt's counsel") in his underlying personal injury lawsuit against Cal Dive, in this Court, which was resolved through settlement agreement.  On April 19,

---

[1] Defendants Walker and Schmidt each filed individual motions to dismiss and adopted by reference Edwards' arguments under Rule 9(b) and 12(b)(6).  Thus, all Defendants will be referred to collectively as "Defendants."

2012, Schmidt's counsel filed a Complaint under the Jones Act and General Maritime Law against Cal Dive International, Inc. ("Cal Dive") seeking damages as well as maintenance and cure benefits, in connection with injuries allegedly sustained as a result of a dive which occurred on April 7, 2010 while Schmidt was in the course and scope of his employment with Cal Dive. *Schmidt v. Cal Dive International, Inc.*, 6:12-cv-00930. The primary condition for which Schmidt sought recovery was postural orthostatic intolerance, a condition wherein the heart rate increases when one changes from a supine to standing position, due to a brain injury. *Id.* Schmidt was examined and treated by a number of physicians and healthcare providers. The record indicates that by September 14, 2013, all medical records had been exchanged, discovery completed and expert depositions conducted. *Id., R. 49, 64.* Depositions were taken of Plaintiff's numerous treating and evaluating physicians as well as the medical examiners retained by Defendants. *Id., R. 86.*

On October 15, 2013, approximately one week before the bench trial was scheduled to begin,[2] a settlement conference was conducted by Magistrate Judge Patrick J. Hanna. During the settlement conference, the parties reached an amicable settlement agreement and placed the material terms of the settlement on the record in open court before Judge Hanna. *R. 1.* The Settlement Agreement called for a lump sum payment with the balance, as well as attorney's fees to Edwards and Walker, to be paid through a structured settlement funded by

---

[2] At the time of the settlement conference, all pre-trial deadlines had expired and the Court had ruled on the parties' dispositive motions, motions in limine and Daubert motions.

Cal Dive and administered by defendants BHG Structured Settlements, Inc. ("BHG") and Berkshire Hathaway Life Insurance Co. Of Nebraska ("Berkshire") (collectively "BHG").[3] On January 8, 2014, the Court issued a final Judgment granting the parties' Joint Motion To Dismiss With Prejudice.

On October 15, 2014, one year after the settlement was placed on the record, Plaintiffs filed this lawsuit seeking to dismiss the final Judgment of Dismissal and set aside the Settlement Agreement for mistake, misrepresentation, and fraud under Rule 60(b)(3). Plaintiffs allege they were fraudulently induced by Schmidt into resolving the suit before trial because video surveillance shows that Schmidt's injuries are not as serious or extensive as they believed at the time of the settlement—that Schmidt was totally and permanently disabled.  Plaintiffs assert they should be reimbursed for all of their litigation expenses incurred with regard to the prior litigation and the present action, and allowed to re-litigate Schmidt's medical claims and damages.  Also, Plaintiffs seek sanctions against Schmidt for bad faith and restitution from Schmidt's counsel of funds they were paid under the settlement.  Finally, Plaintiffs seek a preliminary injunction under Rule 65 prohibiting any further disbursement under the structured settlement to Schmidt or his counsel until a final judgment is rendered.

---

[3]  Also before the Court are Defendants' Motions To Dismiss BHG's Cross- Claim and Interpleader Complaint [Rec. Docs. 45, 46 & 47], Plaintiffs' and BHG's Oppositions [Rec. Docs. 58 & 59] and the Edwards Defendants' Reply thereto [Rec. Doc. 73].  Because the Court will grant Defendants' Motions to Dismiss this action, BHG's cross-claim and interpleader claims are moot and Defendants' Motion to Dismiss BHG's claims will be granted.

Edwards filed a motion to dismiss "for failure to plead fraud with particularity under Rule 9(a), failure to state a claim for unjust enrichment and/or restitution under Rule 12(b)(6), and on the grounds of res judicata." *R. 25.* Defendants Walker and Schmidt also filed individual motions to dismiss "for failure to plead fraud with particularity under Rule 9(b), failure to state a claim for unjust enrichment and/or restitution under Rule 12(b)(6), on grounds of res judicata, and for failing to join parties under Rule 19." *R. 28, 37.* In each of their motions, Schmidt and Walker expressly adopted the arguments in Edwards' motion.

*Legal Standard*

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The "factual allegations must be enough to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atlantic v. Twombly,* 550 U.S. at 555, (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"The tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements do not suffice. . . [The court] can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth. While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations. When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 678-79.  If the

plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from

conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 550

U.S. at 570.

Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter

(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal

relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228,

257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556; *In Re Southern Scrap,*

541 F.3d 584, 587 (5th Cir. 2008).

A dismissal for failure to plead with particularity in accordance with  Rule 9(b) is

treated as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v. Software

Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996).  Rule 9(b) provides, in pertinent part, that,

"[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  When claims for fraud and negligent

misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund v (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n. 3 (5th Cir.2010).  The amount of particularity required for pleading fraud differs from case to case.  *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005).  In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n. 5 (5th Cir.1994).

*Analysis*

Defendants contend the Court should dismiss Plaintiffs' claims against them because: (1) Plaintiffs failed to plead fraud with particularity as required under Rule 9(b); (2) Plaintiffs' have failed to state a cognizable claim for unjust enrichment or restitution and should be dismissed under Federal Rule of Civil Procedure 12(b)(6); (3) Res judicata; and (4) Failure to join a required party under Rule 19.  Defendants further assert that, in light of the applicable jurisprudence, under the binding effect of the voluntary Settlement Agreement, Plaintiffs cannot re-litigate Schmidt's claims and its defenses based on the future outcome of Schmidt's injuries.

*1. Motion to Vacate the Judgment Pursuant to Rule 60(b)(3)*

6

The Fifth Circuit regards a settlement agreement as a contract and courts are instructed to enforce them as they would a contract. *See Guidry v. Halliburton Geophysical Servs.*, 976 F.2d 938, 940 (5th Cir.1992). In general, "when two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purposes of varying or contradicting the writing." *Har–Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir.1986).  It is undisputed that the parties in this case reached a valid and binding settlement agreement, the material terms were placed on the  record of the proceeding and were memorialized in writing.

The issue of enforceability or validity of the settlement agreement in this case is determined by federal law because the underlying substantive rights and liabilities derive from the federal maritime law and the Jones Act.  *See, In re Oil Spill by Oil Rig "DEEPWATER HORIZON" in Gulf of Mexico, on April 20, 2010*,  2014 WL 931235, 4 (E.D.La.,2014).  It is axiomatic that settlement agreements are a favored means of resolving disputes. *Id.* (citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  Because it is presumed that the parties making settlements have consulted their own interests, settlement agreements should not be taken lightly or be interfered with or impeached. *Thibaut v. Ourso*, 605 F.Supp. 1, 2–3 (M.D.La.1981).  "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced

upon him or by a mutual mistake under which both parties acted." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 392 (5th Cir. 1984).   In the absence of such fraud or mutual mistake, a settlement voluntarily entered into cannot be repudiated by either party or set aside by the court. *In re DEEPWATER HORIZON*, (citing *Bisso*, 1996 WL 28520, at \*5); *see also Thibaut*, 605 F.Supp. at 3.

Rule 60(b) of the Federal Rules of Civil Procedure provides in relevant part as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ...
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an opposing party.

Fed. R. Civ. P. 60(b).   Rule 60(b) allows the trial court to "correct obvious errors or injustices." *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir.1977). A party moving under Rule 60(b) must show "unusual or unique circumstances." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir.1985). Relief under Rule 60(b) is an extraordinary remedy; " 'the desire for a judicial process that is predictable mandates caution in reopening judgments.' "[4]  *In re Pettle*, 410 F.3d 189, 191 (5th Cir.2005).   A party making a Rule 60(b)(3) motion must establish by clear and convincing evidence: (1) that the adverse party engaged in fraud or

---

[4]  "Rule 60(b)(3) cannot be used as the vehicle for setting aside the Settlement Agreement, only the Court's judgment. *See* Fed.R.Civ.P. 60(b)." *Natural State Resorts, Inc. v. DKE Entertainment, Inc.*, 2002 WL 384465, 6 (N.D.Tex.,2002).

other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. *Daniels v. JP Morgan Chase* 574 Fed.Appx. 337 (5th Cir. 2014) (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005)).

"Clear and convincing evidence" means that weight of evidence that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established ... as to enable the fact finder to come to a clear [belief or] conviction, without hesitancy, of the truth of the precise facts[ ] of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir.2004) . "Clear and convincing proof is a high standard, requiring more than a preponderance of the evidence." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir.2001).

Plaintiffs' Complaint establishes the following allegations which occurred during the course of the litigation: (1) Schmidt appeared for his depositions on December 12, 2012 and January 21 and 24, 2013 in a reclining wheelchair and gave his testimony while reclining on a couch, *R.* 1, ¶ 19; (2) Schmidt spent more than 90% of his day lying down on the couch, *Id.* at ¶ 20; (3) Schmidt could no longer drive a car and had to be transported in the backseat or by ambulance, *Id.* at *¶ 21.*  Plaintiff's further allege that, "[p]rior to the settlement, Cal Dive diligently investigated Schmidt at considerable expense but did not find any evidence indicating that Schmidt was feigning his alleged injuries and disability." *Id.* at ¶ 24.

As to Plaintiffs' allegations in support of their claims that Schmidt engaged in fraud by making material misrepresentations of fact and suppressing the truth regarding his

condition and alleged disability in order to induce Plaintiffs to enter into the Settlement Agreement, the Court finds the majority of these allegations are mere conclusory statements and are therefore not entitled to the assumption of truth.  The Court accepts the following post-litigation allegations to be well pleaded factually: (1) "Cal Dive has obtained surveillance video taken recently of Schmidt cutting his grass, shopping, driving, and jogging for at least two miles" *R. 1, ¶34*; and (2) "[O]n December 4, 2013, only weeks after the settlement had been reached and just prior to the execution of the Release, Schmidt obtained a driver's license and purchased a new 2014 Toyota 4-Runner on December 13, 2013 ...." *R. 1, ¶ 35.*

"[C]onclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud ...."  *Di Vito v. Fidelity & Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966).  Here, Plaintiffs contend their allegations demonstrate that Schmidt's injuries may have been exaggerated.  The Complaint, however, states generally that "Cal Dive learned that Schmidt had committed perjury in his sworn testimony and that his injuries were neither permanent nor debilitating" and generically refers to "numerous other fraudulent misrepresentation . . . in pleadings, other court filings and document," without identifying what statements were supposedly intentionally false.  *R.1, ¶ 33, 36.* Such allegations are insufficient to raise the expectation that discovery will reveal clear and convincing evidence that Schmidt engaged in fraud or

other misconduct which prevented Cal Dive from fully and fairly presenting their case. Instead, the Court finds that Cal Dive's claims amount to nothing more than supposition and speculation that Schmidt engaged in fraud related to this case. Plaintiffs' allegations must be "more than a sheer possibility" that Schmidt *may* have exaggerated his injuries during his deposition. A party seeking to vacate a judgment on the grounds that fraud and misrepresentation were used to procure the settlement upon which that judgment is based, must establish the existence of such fraud by clear and convincing evidence. *Id.* While the Complaint references that the aforesaid factual allegations contradict Schmidt's past testimony under oath, there are no facts supporting Plaintiffs' general allegation that Schmidt had information contrary to his testimony or that he knowingly and willfully gave false testimony contrary to that information.

In *Strange v. Gulf & South American S. S. Co., Inc.*, 495 F.2d 1235 (5th Cir. 1974), a case factually similar to this one, the Fifth Circuit rejected the injured party's opposition to enforcement of a settlement agreement based on a mutual mistake by the parties concerning his medical condition at the time of the settlement. Thus, as with the alleged misrepresentation/fraud in this case the alleged mistake went to the strength or value of the plaintiff's case on the merits. The court found nothing in the record indicated a failure to disclose medical facts as to the injured party's medical condition or to mislead as to any prognosis. *Id.* at 1236. The court held that because the parties negotiated at arms-length and there was no taint of "fraud, deception, coercion or overreaching," the settlement was

binding, despite a claim of mutual mistake. The Fifth Circuit explained:

> There would be little security in the settlement of a personal injury claim if the binding effect of such a settlement depended upon the certainty of the extent and outcome of the injuries involved. It is the very consequences of these uncertainties which the parties seek to foreclose by settlement and to take their chances on their outcome.

*Id.* at 1237.

Quoting the above language in *Strange,* the court in *In re DEEPWATER HORIZON,* 2014 WL 931235, at *4, denied BP's attempt to invalidate a settlement agreement with a personal injury claimant. BP argued that evidence obtained after the settlement suggested that the claimant "may have fabricated or exaggerated his injury," and the court should vitiate consent to the settlement agreement. The court denied BP's motion for summary judgment and held that the settlement was binding because BP was aware of suspicions that the claimant was exaggerating both the facts of his accident and his injuries prior to the settlement but allowed the settlement to proceed and become final. *Id.* BP could not avoid its obligations to pay the agreed to settlement amount because it subsequently obtained evidence that called into question the severity of the claimant's injuries. *Id.*; *See also Allen v. Noble Drillings,* 637 So.2d 1298 (La. Ct. App. 4th 1994) (denying motion to annul settlement agreement which was based on the plaintiff's failure to disclose that one of his treating physicians did not recommend surgery, because the defendant was aware of the treating physician's identity during settlement negotiations, knew it did not have those particular medical records, and knew of other physicians who recommended against

surgery.[5])

In this case, Cal Dive was represented by counsel, the parties negotiated at arms-length and in apparent good faith. There is no allegation as to the competency of Cal Dive's counsel or the adequacy of legal advice nor of any taint of fraud, deception, coercion or overreaching by Schmidt or Schmidt's counsel in the negotiations eventuating in the settlement. Plaintiffs' Complaint makes no allegation of a failure to disclose any known medical facts with respect to Schmidt's injury or condition, nor of any particularized attempt to mislead Cal Dive as to Schmidt's diagnosis or prognosis. The record provides that Schmidt's symptoms and diagnosis were corroborated by his own healthcare providers as well multiple physicians and experts chosen by Cal Dive. There is no allegation that Cal Dive did not possess all the facts and medical records that Schmidt possessed. Four years and six months elapsed from the date of Schmidt's injury to the time of settlement. Cal Dive litigated Schmidt's claims in this Court for two years and six months and continued to contest medical causation and the extent of Schmidt's damages until the conclusion of the case.

Plaintiffs' allegations fail to state a plausible claim that discovery will lead to the clear and convincing evidence that Schmidt engaged in fraud or other misconduct which prevented Cal Dive from fairly presenting their case. The Court therefore concludes that Plaintiffs have failed to establish that the Court's Judgment should be dismissed under Rule 60(b)(3). Moreover, Defendants' position is supported by the jurisprudence recognizing that a later

---

[5] The *Allen* court applied general maritime law to the Jones Act defendant's motion.

change in circumstance, without more, does not lead to a reasonable inference that a representation was false when it was made. The record indicates that, despite the fact that Cal Dive was skeptical as to the extent of Schmidt's medical condition and disabilities and questioned his credibility, it chose nevertheless to settle Schmidt's claims to avoid the uncertainty as to the outcome of the impending trial. Clearly, the amount of the Settlement Agreement represented to both Cal Dive and Schmidt a discount of the value of the judgment in exchange for avoiding those uncertainties and risks. Such a decision inherently requires that both parties take their chances on the outcome of the injuries involved. *Strange*, 495 F.2d at 1237.

## 2. Motion For Unjust Enrichment and Restitution

Plaintiffs' Complaint also alleges an unjust enrichment claim against Schmidt's former counsel, Edwards and Walker, and requests restitution of all legal fees paid to them. Defendants contend that Plaintiffs have failed to state a cognizable claim for unjust enrichment or restitution and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Based on the Court's ruling that Plaintiffs have failed to state a claim under Rule 60(b)(3), it is not necessary to address Defendants' arguments as to these claims. However, even assuming *arguendo* that Plaintiffs have stated a valid fraud claim against Schmidt, Plaintiffs' unjust enrichment and restitution claims against Schmidt's former counsel, Edwards and Walker, must be dismissed.

In support of their claims against Edwards and Walker, Plaintiffs cite an unpublished order, *In re DEEPWATER HORIZON*, Order & Reasons, April 29, 2014, in which the court granted restitution against a claimant's lawyers, Jon Andry, Glen Lerner and Lionel Sutton, based the

14

special master's findings that their client submitted fraudulent tax documentation in support of his claims in the Court Supervised Settlement Program ("CSSP"). The Court finds that the court's order in the *Deepwater Horizon* case was based on a highly unique situation, in particular with the claimant's lawyers involved, and is therefore distinguishable from the situation in this case. *See, In re DEEPWATER HORIZON*, Order [Concerning the Special Master's Report of September 6, 2013; Imposing Certain Sanctions], February 26, 2015 (Disqualifying attorneys Lionel Sutton, Jon Andry and Glen Lerner from participating in the CSSP under the Unclean Hands Doctrine as well as several canons of ethics violations). In fact, federal maritime law provides little to no guidance on restitution claims such as those asserted by Plaintiffs. In a situation such as this, maritime law may be supplemented by either state law or more general common law principles, such as those found in the Restatements. *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir.1986). Moreover, some federal courts in analyzing a maritime unjust enrichment claim have looked to state law to determine if the claim is viable. *See, e.g. Cashman Scrap & Salvage, L.L.C. v. Bois d'Arc Energy, Inc.*, 2009 WL 3150234 (E.D. La., 2009)(analyzing a maritime unjust enrichment claim under Louisiana law); *Louisiana v. Rowan Companies, Inc.*, 728 F. Supp. 2d 896, 904-05 (S.D. Tex., 2010 (looking to Louisiana law on unjust enrichment and holding that the maritime unjust enrichment claim was not viable).

"Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf." *Penalber v. Blount,* 550 So.2d 577, 581 (La.,1989) *superceded by La. Code Civ. P. Art. 966.* Under Louisiana law: (1) non-clients may

not sue an adversary's attorney unless there is some allegations of wrongful conduct; and, (2) an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf. *Montalvo v. Sondes,* 637 So.2d 127, 130 (La.,1994). Likewise, under the Restatement (Third) of the Law Governing Lawyers, "[a] lawyer representing a party in litigation has no duty of care to the opposing party [ ], and hence no liability for lack of care, except in unusual situations such as when a litigant is provided an opinion letter from opposing party as part of a settlement.... Similarly, a lawyer representing a client in an arm's-length business transaction does not owe a duty of care to opposing nonclients...." Restatement (Third), The Law Governing Lawyers, § 51, Comment (c).

In addition to the foregoing rules precluding non-client suits against an adverse party's attorney in the absence of tortious conduct by the attorney, Louisiana and common law hold that there is no claim for unjust enrichment against an attorney arising out of the payment of legal fees when the payment was due at the time it was made. *City Financial Corp. v. Bonnie,* 762 So.2d 167, 170 (La.App. 1 Cir.,2000) ("Where a party receives payment of funds pursuant to a valid judgment and disposes of a portion of the funds to pay his attorney, the payor may not follow the payment into the hands of the receiver's attorney once the judgment is reversed by devolutive appeal.").

" Under Louisiana law, five elements must be satisfied in order to establish a claim for unjust enrichment: "(1) an enrichment of the defendant, (2) an impoverishment of the plaintiff, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for either the enrichment or the impoverishment, and (5) no other remedy available at law." *Cashman Scrap & Salvage, L.L.C. v. Bois d'Arc Energy, Inc.,* 2009 WL 3150234, 4 (E.D.La.,2009) (J. Fallon). For purposes of unjust enrichment the term "without cause" excludes "cases in which the enrichment results from a valid juridical act or the law." La. Civ.Code art. 2298. Under the

16

Restatement (Third) of the Law on Restitution, a payee who accepts a payment in good faith in satisfaction or reduction of a valid claim as a creditor of the payor is not subject to a claim for restitution if the payee had no notice of the facts underlying the subsequent claim for restitution. Restatement (Third), Restitution, § 67(1).

Here, Plaintiffs do not allege that Edwards and Walker engaged in any wrongful conduct, but instead state they "do not believe that Edwards and Walker were aware of Schmidt's fraud." *R. 1, ¶ 62.* Plaintiff also state in their Complaint that, at the time of the Settlement Agreement and the dismissal of the action with prejudice, the payments for legal fees were due from Schmidt to his attorneys and were structured through the Settlement Agreement—an enforceable juridical act between the parties. *R. 31, 60.* Accordingly, Plaintiffs are not entitled to return of the funds legitimately paid by Schmidt to his attorneys for their legal services under Louisiana or federal law.[6]

## Conclusion

For the reasons provided in the foregoing, including the applicable jurisprudence, the Court finds that Plaintiffs have failed to state a claim against Schmidt for fraud and against Edwards and Walker for unjust enrichment and restitution. Thus, the Court will deny Plaintiffs' claims under Rule 60(b)(3) and dismiss all of Plaintiffs' claims against Defendants.

Richard T. Haik, Sr.

---

[6] The Court need not address Defendants' res judicata argument.